IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LEODAN ALARCON-CHAVEZ, | |
| Petitioner, | **8:17CV345** |
| vs. | |
| THE STATE OF NEBRASKA, and SCOTT FRAKES, Director of the Nebraska Department of Corrections; | **MEMORANDUM AND ORDER** |
| Respondents. | |

This matter is before the court on Petitioner Leodan Alarcon-Chavez's ("Petitioner" or "Alarcon-Chavez") Petition for Writ of Habeas Corpus. (Filing No. 1.) For the reasons that follow, Petitioner's habeas petition is denied and dismissed with prejudice.

## I.  CLAIMS

Summarized and condensed, and as set forth in the court's initial review order (Filing No. 8), Petitioner asserted the following claims that were potentially cognizable in this court:

Claim One:   Petitioner was denied his right to due process under the 5th, 6th, and 14th Amendments because the trial court erred in rejecting Petitioner's proposed jury instruction and failing to find the entire step instruction was an incorrect statement of law.

Claim Two:   Petitioner was denied his right to be free from unreasonable searches and seizures under the 4th and 14th Amendments because the trial court erred in overruling Petitioner's amended motion to suppress based on an

unauthorized seizure of Petitioner's vehicle without a warrant.

Claim Three: Petitioner was denied his right to a fair trial under the 5th, 6th, and 14th Amendments because of the prosecutor's inflammatory remarks made during his closing and rebuttal arguments.

Claim Four: Petitioner was denied his rights to due process and to effective assistance of counsel under the 5th, 6th, and 14th Amendments because trial counsel failed to (1) verify, ensure, and/or preserve the making of an official record of the voir dire proceeding, (2) raise a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), when the State struck a Hispanic juror from the venire; (3) communicate plea offers; (4) speak with witnesses provided by Petitioner; (5) advise Petitioner of his right to independently test DNA, (6) advise Petitioner of his right to depose the State's expert witnesses, and (7) object during trial to the State's questioning of key witnesses and offers of exhibits.

Claim Five: Petitioner was denied his rights to due process and to a fair trial under the 5th, 6th, and 14th Amendments because he could not understand one of the trial court Spanish interpreters.

(Filing No. 8 at CM/ECF pp. 1-2.)

## II. BACKGROUND

### A. Conviction and Sentence

The court states the facts as they were recited by the Nebraska Supreme Court in *State v. Alarcon-Chavez*, 821 N.W.2d 359, 361-65 (Neb. 2012) (affirming Alarcon-Chavez's convictions on direct appeal). (Filing No. 10-13.) *See Bucklew v.*

*Luebbers*, 436 F.3d 1010, 1013 (8th Cir. 2006) (utilizing state court's recitation of facts on review of federal habeas petition).

## 1. Events Prior to Stabbing

Alarcon-Chavez and Maria Villarreal ("Villarreal") began dating and moved into an apartment together in January 2009. Alarcon-Chavez was the sole leaseholder for their apartment, which was located in Norfolk, Nebraska. Their relationship ended after Alarcon-Chavez informed Villarreal that he was seeing another woman. After the breakup, Villarreal stayed in the apartment and Alarcon-Chavez moved in with a friend. While he was living with his friend, Villarreal called to threaten him on several occasions. Once, she told him that her boyfriend would "adjust accounts" with him.

On two occasions when he knew Villarreal would not be present, Alarcon-Chavez went back to the apartment he had shared with Villarreal. One time, he noticed another man's clothes.

In late February 2010, Villarreal began dating Aniel Campo Pino ("Pino"), and he moved into the apartment with Villarreal and her 3-year-old son.

On March 9, 2010, Alarcon-Chavez saw Villarreal and Pino at a store. Alarcon-Chavez returned to his friend's house around 7 p.m. and began consuming alcohol. Around 11 p.m., he drove across town to Wal-Mart to purchase more beer. While at Wal-Mart, Alarcon-Chavez saw a set of Sunbeam knives, and he testified he decided to purchase them for cooking purposes. He purchased the knives and beer just after 11:30 p.m. He returned to his friend's house and took the beer inside, but left the knife set in the vehicle.

Alarcon-Chavez knew Villarreal went to work early in the morning. So, around 5 a.m. on March 10, 2010, he drove to the apartment where Villarreal was living. He testified that he intended to tell Villarreal and Pino to get out of his

apartment. He explained he did not want to live with his friend anymore because he had been sleeping on the floor and using clothes for a pillow.

## 2. Stabbing

Alarcon-Chavez arrived at the apartment around 5:10 or 5:20 a.m. He initially got out of the vehicle, but then, after remembering Villarreal's threat that Pino would "adjust accounts" with him, reentered it. Alarcon-Chavez then remembered the knife set, so he opened the package with his teeth and concealed one of the knives on his body.

Alarcon-Chavez entered the apartment and found Villarreal in the kitchen making her lunch. She had a knife in her hand. Villarreal came toward Alarcon-Chavez and grabbed his body and somehow dropped the knife. She was holding Alarcon-Chavez and yelling for the police and for Pino, and Alarcon-Chavez was struggling to escape her grip. Fearing that Pino would attack him, he drew the knife he had concealed on his body. Alarcon-Chavez and Villarreal continued to struggle, and as he tried to get loose, he stabbed Villarreal in the abdomen. Alarcon-Chavez did not remember stabbing her anywhere else. After the stabbing, Villarreal sat on the floor and leaned back onto the carpet. Alarcon-Chavez then heard someone coming and locked the door.

Pino had gone outside before Alarcon-Chavez arrived. He went back to the apartment after he heard Villarreal scream. When he arrived, the door was locked. Villarreal was screaming that he should not come in because a man was stabbing her. Pino told Alarcon-Chavez to come out of the apartment so he could help Villarreal, but Alarcon-Chavez did not respond. Pino left for a few minutes to give Alarcon-Chavez an opportunity to leave, but Alarcon-Chavez was still inside when Pino returned. Pino heard Villarreal saying, "Leo, don't kill me, Leo, don't kill me." Alarcon-Chavez then told Villarreal he was going to kill her and said, "I told you not to leave me because if you did this was going to happen to you." Pino told a neighbor to call the police and then retrieved a friend.

Police officers were dispatched to the apartment. One officer knocked at 6:06 a.m. and tried unsuccessfully to open the door. An officer standing outside of the apartment activated a tape recorder. Villarreal can be heard on the recording pleading for help. She told Alarcon-Chavez to go away and not to kill her. She said that she had been stabbed five times and that Alarcon-Chavez was still in the apartment with her. The recording also revealed numerous expressions of pain from Villarreal, several of which occurred just before the officers entered the apartment. Alarcon-Chavez testified that Villarreal was not asking him not to kill her, but, rather, was begging him not to kill himself.

When another officer arrived, he knocked and announced his presence and tried to open the door. Either Pino or his friend told the officers they needed to get inside. The officers entered the apartment by kicking the door several times. When the officers opened the door, they observed Alarcon-Chavez standing over Villarreal's body with a knife in each hand. Alarcon-Chavez was shot with an electric stun gun and handcuffed. He was covered in blood. As Alarcon-Chavez was being taken out of the apartment, Pino's friend asked him "why [he] didn't do this to [Pino and his friend]," and he responded that "he didn't want to do any harm to [them], the problem wasn't with [them]."

Although she was obviously in pain, Villarreal was alert, coherent, and talking when the officers first entered the apartment. Within a few minutes, her color turned to an ash gray and she stopped speaking. There was a large amount of blood around her. She died as a result of multiple stab wounds. Her most traumatic wound traversed the upper right side of her abdomen. The cut went through the right lobe of her liver and pierced her inferior vena cava. The wound caused a massive intra-abdominal hemorrhage. She also had stab wounds on the right side of her back, on her right tricep, and under her left armpit. She had several deep cuts on her hands which were described at trial by one of the officers as classic defense wounds. The officer explained, "[I]f somebody is attacking you with a knife, your natural reaction is to protect your body [by] bring[ing] your hands up."

## 3. Investigation

Several items from the crime scene underwent DNA testing. Villarreal was included as a match for blood found on two knives discovered at the scene, and testing revealed an infinitely low possibility that the blood belonged to anyone else. Villarreal was also a match for blood found on a blue shirt Alarcon-Chavez was wearing at the time of his arrest. Blood found on the shirt also revealed a single male profile. While this blood was never compared with the blood of Alarcon-Chavez, one officer opined that the blood came from Alarcon-Chavez being shot with the electric stun gun, which would have penetrated his skin. There were no defensive wounds on Alarcon-Chavez's hands.

Officers learned that a vehicle parked outside the apartment belonged to Alarcon-Chavez. By looking through the window, an officer saw a package for three Sunbeam knives protruding from a Wal-Mart bag; one of the knives was missing. An officer believed that a knife found inside the apartment was the missing knife. After discussing with the prosecutor what was observed in the vehicle, officers decided to tow the vehicle without first obtaining a warrant. Department policy permitted the officers to seize the vehicle and later obtain a search warrant. The vehicle was transported and secured in the Norfolk Police Division's sally port, and a search warrant was obtained.

The following items were recovered from the vehicle: a knife; a package of three knives in a Wal-Mart bag with the middle knife missing; an unbent piece of plastic, which appeared to be cut from the package of knives; a barbell; a baseball bat; a warning citation for speeding; a purchase contract showing the vehicle was purchased on March 7, 2010; and another Wal-Mart bag with a holder for jumper cables. The State charged Alarcon-Chavez with murder in the first degree, use of a deadly weapon to commit a felony, and tampering with a witness. The latter charge was based upon an incident between Alarcon-Chavez and Villarreal for which

Alarcon-Chavez was charged with terroristic threats and use of a weapon to commit a felony.

## 4. Motion to Suppress

Alarcon-Chavez moved to suppress all physical evidence seized by the officers during the search of his vehicle, and following a hearing, the court made the following factual findings:

> Officers were called to an apartment where [Villarreal] was found with multiple stab wounds. [Alarcon-Chavez] was present in the apartment in the possession of a knife and was arrested. Law enforcement officers were directed to an automobile in the apartment parking lot. A three-knife set was in plain view in the vehicle in which one knife was missing. The knife recovered at the apartment appeared to be part of that set. The vehicle was then impounded and transported into police custody. A search warrant was obtained the next day and the car was searched.

Based upon this evidence, the district court concluded that the officers had probable cause to seize the vehicle. The court reasoned that because the officers had probable cause to conduct a warrantless search of the vehicle, they were also authorized to seize the vehicle and to search it after obtaining a warrant. Accordingly, the court denied the motion to suppress.

## 5. Trial and Jury Instructions

A jury trial was held from June 13 to 16, 2011. At the jury instruction conference, the court proposed giving NJI2d Crim. 3.1, the standard step instruction defining the elements of first degree murder, second degree murder, and manslaughter, in that order. Alarcon-Chavez objected to the proposed instruction.

Alarcon-Chavez's proposed instruction did not challenge the elements of the crimes. Rather, it contested the order in which the jury was to consider them. The

court overruled Alarcon-Chavez's objection, reasoning that the jury was required to read all instructions in connection with one another and that the instructions adequately informed the jury there were three levels of homicide.

## 6. Closing Arguments

During closing argument, the State discussed Alarcon-Chavez's credibility and truthfulness. The prosecutor questioned Alarcon-Chavez's claim that he opened the package of knives with his teeth, arguing the evidence showed it was cut open. The prosecutor asserted that the knife purchase was not a spontaneous decision, as claimed by Alarcon-Chavez, and that Alarcon-Chavez did not go back to the apartment for the purpose of telling Villarreal and Pino to leave. The prosecutor called Alarcon-Chavez's claim that Villarreal was begging for him not to kill himself "absolutely preposterous and insulting." The prosecutor also likened the case to the O.J. Simpson case. In concluding, the prosecutor said, "[T]he defense told you to focus on credibility. But they call [Alarcon-Chavez] anyway."

When Alarcon-Chavez's defense attorney began his closing argument, he told the jury he would not go through all the evidence or "sit and read [the jury] instructions." One of the prosecutor's first statements in rebuttal was that it was smart for the defense not to discuss the evidence or the jury instructions very much because both essentially said to "go back and find [Alarcon-Chavez] guilty." The prosecutor asked the jury to be "fair to dead people" and again challenged Alarcon-Chavez's credibility, commenting, "You saw him lying."

Finally, the prosecutor told a story about General Anthony McAuliffe's being informed that he was surrounded and that he should surrender. McAuliffe responded, "'Nuts,'" and when General George Patton learned of the response, he said, "[A] man that eloquent has to be saved." Turning back to the case, the prosecutor asked, "[W]hat do you say to this crazy theory[?]" and stated, "What you're going to have to do is go back there and fill out guilty. That is the most eloquent answer you can

give, and that is the short answer, the same answer [General] McAuliffe would have given." Alarcon-Chavez did not object to any of the prosecutor's closing remarks.

### 7. Verdict and Sentencing

Alarcon-Chavez was found guilty on all counts. He was sentenced to life imprisonment, with credit for 534 days of time served, for murder in the first degree; to an indeterminate term of not less than 19 nor more than 20 years' imprisonment for use of a deadly weapon to commit a felony; and to an indeterminate term of not less than 1 nor more than 2 years' imprisonment for tampering with a witness. The sentences were to run consecutively. Alarcon-Chavez timely appealed.

## B. Direct Appeal

Alarcon-Chavez appealed his convictions to the Nebraska Court of Appeals on September 20, 2011. (Filing No. 10-5 at CM/ECF pp. 1-2, 10.) The appeal was directed to the Nebraska Supreme Court. (*Id.* at CM/ECF p. 13.) Alarcon-Chavez was represented both at trial and on direct appeal by lawyers from the same office. In his brief, Alarcon-Chavez assigned that the state district court erred in (1) finding that it was lawful for the officers to seize his vehicle without a warrant and denying his motion to suppress and (2) refusing to give his proposed jury instruction that Villarreal's death was intentional but provoked by a sudden quarrel and instead giving an instruction on manslaughter that did not require the State to prove that the killing was not the result of a sudden quarrel. Alarcon-Chavez also asserted that the prosecutor's closing remarks deprived him of his right to a fair trial and that reversal was warranted under the plain error standard. (Filing No. 10-2 at CM/ECF p. 2, 10-11; Filing No. 10-4 at CM/ECF p. 2.)

The Nebraska Supreme Court rejected Alarcon-Chavez's claims of trial court error and prosecutorial misconduct. (Filing No. 10-13.) With respect to Alarcon-Chavez's challenge to the trial court's decision to deny his motion to suppress, the court held that the police officers had probable cause to have immediately searched

Alarcon-Chavez's vehicle without a warrant and thus were not precluded from seizing the vehicle and then searching it at a later time after obtaining a warrant, because: the vehicle was operational and therefore readily movable; the officers knew Villarreal had been severely injured with a knife; a Sunbeam knife was found in the apartment; and a set of Sunbeam knives with one knife missing was clearly visible from outside of Alarcon-Chavez's vehicle. (*Id.* at CM/ECF p. 11.) Regarding Alarcon-Chavez's challenge to the manslaughter jury instruction, the court concluded that where the jury found that premeditation, intent, and malice existed beyond a reasonable doubt, Alarcon-Chavez was not prejudiced and his substantial rights were not affected by any error in the instructions. (*Id.* at CM/ECF p. 12.) Last, with respect to Alarcon-Chavez's prosecutorial misconduct claims, the court concluded that the prosecutor's closing remarks did not rise to the level of prosecutorial misconduct that would warrant reversal under the plain error standard of review, even assuming they were improper, because: the comments were based on the evidence and were few and isolated in a long closing argument and rebuttal; the evidence that the murder was premeditated and deliberate was plenary; and any resulting prejudice to Alarcon-Chavez was not of such a nature that to leave it uncorrected would have resulted in damage to the integrity, reputation, and fairness of the judicial process. (*Id.* at CM/ECF pp. 13-14.) As the court found no merit to Alarcon-Chavez's assigned errors, the court affirmed his convictions. (*Id.* at CM/ECF p. 14.)

## C. Postconviction Action

Alarcon-Chavez filed a verified motion for postconviction relief on February 27, 2013. (Filing No. 10-14 at CM/ECF pp. 2-3.) The state district court appointed new counsel to represent Alarcon-Chavez in the postconviction matter. Alarcon-Chavez was granted leave to amend his postconviction motion several times (*id.* at CM/ECF pp. 4-27), and, through counsel, he filed a fourth amended motion for postconviction relief on September 9, 2015. (*Id.* at CM/ECF pp. 28-38.) Alarcon-Chavez alleged numerous claims: (1) that the state district court erred in failing to require a recording of the voir dire proceeding and that his trial counsel was

ineffective for not verifying, ensuring and/or preserving the making of an official record of the voir dire proceeding; (2) that trial counsel was ineffective for failing to raise a *Batson* challenge to the State's peremptory strike of a Hispanic juror; (3) that trial counsel was ineffective for not timely communicating plea offers; (4) that trial counsel was ineffective for failing to have an independent testing of the State's DNA and fingerprint evidence presented at trial; (5) that trial counsel was ineffective for failing to depose any of the State's expert witnesses; (6) that trial counsel was ineffective for failing to notify him whether defense witnesses had been contacted before trial and for failing to call defense witnesses at trial; (7) that trial counsel was ineffective for failing to obtain an independent medical examination of Villarreal; (8) that trial counsel was ineffective for failing to object to the prosecutor's unfairly prejudicial comments and offers of exhibits and for failing to strike certain answers; (9) that trial counsel was ineffective for failing to sufficiently and accurately advise him of his right to testify or not to testify and the possibility of outcomes in light of the accusations and evidence presented against him; (10) that trial counsel was ineffective for failing to properly prepare him for cross-examination; (11) that trial counsel was ineffective for failing to object to jury instructions on manslaughter; (12) that the state district court erred in denying trial counsel's motion to sever the tampering with a witness charge; (13) that the State's striking of a Hispanic juror and the prosecutor's unfairly prejudicial comments constituted prosecutorial misconduct; and (14) that his constitutional rights were violated because he was unable to understand one of the court interpreters during trial and trial counsel was ineffective for failing to so advise the court. (*Id.*)

An evidentiary hearing was held on the issues set forth in Alarcon-Chavez's fourth amended motion for postconviction relief. (Filing No. 10-20 at CM/ECF pp. 28-197.) In a written order entered April 6, 2016, the state district court denied postconviction relief on all grounds. (Filing No. 10-14 at CM/ECF pp. 39-56.) Alarcon-Chavez appealed to the Nebraska Supreme Court, arguing that the state district court erred in denying his postconviction motion because his trial counsel was constitutionally ineffective for failing to (1) "verify, ensure and or preserve" a record was made of voir dire, (2) raise a challenge under *Batson* when the State

struck a Hispanic juror from the venire, (3) communicate plea offers, (4) speak with witnesses before trial, (5) advise Alarcon-Chavez of his right to independently test DNA, (6) advise Alarcon-Chavez of his right to depose the State's expert witnesses, and (7) object during trial to the State's questioning of key witnesses and offers of exhibits. (Filing No. 10-17 at CM/ECF pp. 7-8; Filing No. 10-19.) Additionally, Alarcon-Chavez argued that the state district court erred in not finding his constitutional rights were violated because he was unable to understand one of the court interpreters during trial. (Filing No. 10-17 at CM/ECF p. 8; Filing No. 10-19.)

In a published opinion, the Nebraska Supreme Court concluded that all of Alarcon-Chavez's claims were without merit and, thus, they were properly denied. *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 710 (2017). (Filing No. 10-22.) The mandate issued on March 17, 2017. (Filing No. 10-16 at CM/ECF p. 2.)

## D. Habeas Petition

Alarcon-Chavez timely filed his Petition in this court on September 20, 2017. (Filing No. 1.) In response to the Petition, Respondent filed an Answer, a Brief, and the relevant state court records. (Filing Nos. 10, 11, 12 & 13.) Alarcon-Chavez filed a brief in response to Respondent's Answer (Filing No. 18), and Respondent filed a reply brief (Filing No. 19). This matter is fully submitted for disposition.

## III. STANDARDS OF REVIEW

### A. Standard Under 28 U.S.C. § 2254(d)

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As

explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Id.* at 405-06, 120 S. Ct. 1495. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, Section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* Indeed, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*

However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA [Antiterrorism and Effective Death Penalty Act] standard to [the

petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. Accordingly, the postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted).

The court also determined that a federal court reviewing a habeas claim under the AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497. A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.*

## B. Procedural Bar

To be eligible for federal habeas corpus relief, a state prisoner must first "exhaust his state law remedies and fairly present the facts and substance of his habeas claim to the state court." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (quoting *Middleton v. Roper*, 455 F.3d 838, 855 (8th Cir. 2006)). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). In Nebraska, "one complete round" ordinarily means that each habeas

claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court. *See Akins v. Kenney*, 410 F.3d 451, 454 (8th Cir. 2005).

"Resolving whether a petitioner has fairly presented his claim to the state courts, thus permitting federal review of the matter, is an intrinsically federal issue that must be determined by the federal courts." *Wyldes v. Hundley*, 69 F.3d 247, 251 (8th Cir. 1995). "In order to 'fairly present' a claim, 'a petitioner is required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" *Nash v. Russell*, 807 F.3d 892, 898 (8th Cir. 2015), *cert. denied*, 136 S. Ct. 1825 (2016) (quoting *Barrett v. Acevedo*, 169 F.3d 1155, 1161-62 (8th Cir. 1999) (en banc)). "This requirement is not met by '[p]resenting a claim that is merely similar to the federal habeas claim.'" *Id.* (quoting *Barrett*, 169 F.3d at 1162); *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (noting "'[i]f state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution'" (quoting *Duncan v. Henry*, 513 U.S. 364, 365-66, 115 S. Ct. 887, 887, 130 L. Ed. 2d 865 (1995)).

"Ordinarily, a federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules." *Arnold v. Dormire*, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (internal citations and quotations marks omitted). "The Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 et seq. is available to a defendant to show that his or her conviction was obtained in violation of his or her constitutional rights," however, "the need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity." *State v. Sims*, 277 Neb. 192, 198, 761 N.W.2d 527, 533 (2009). Under Nebraska law, "on postconviction relief, a defendant cannot secure review of issues which were or could have been litigated on direct appeal." *State v. Bazer*, 276 Neb. 7, 17, 751 N.W.2d 619, 627 (2008).

Federal courts generally will not review claims that a state court has refused to consider because of the petitioner's failure to satisfy a state procedural requirement. *Hunt v. Houston*, 563 F.3d 695, 703 (8th Cir. 2009); *see Johnson v. Lee*, ___ U.S. ____, ____, 136 S. Ct. 1802, 1804, 195 L. Ed. 2d 92 (2016) (per curiam). This rule applies only if the state decision is based on independent grounds and is adequate to support the judgment. *Hunt*, 563 F.3d at 703. State rules count as "adequate" if they are "firmly established and regularly followed." *Johnson*, ___ U.S. at ____, 136 S. Ct. at 1804 (quoting *Walker v. Martin*, 562 U.S. 307, 316, 131 S. Ct. 1120, 179 L. Ed. 2d 62 (2011) (internal quotation marks omitted). A rule that requires criminal defendants to raise available claims on direct appeal and bars, as procedurally defaulted, a claim raised for the first time on state collateral review if the defendant could have raised it earlier on direct appeal is adequate because it is "longstanding, oft-cited, and shared by habeas courts across the Nation." *Id.* at ___, 136 S. Ct. at 1803 (noting that all states apply the rule).

"The doctrine barring procedurally defaulted claims from being heard is not without exceptions—[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." *Trevino v. Thaler*, 569 U.S. 413, 421, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013) (quoting *Martinez v. Ryan*, 566 U.S. 1, 10, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012)). Also, a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims on the merits notwithstanding the existence of a procedural bar to relief. *McQuiggin v. Perkins*, 569 U.S. 383, 392, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013).

To invoke the actual innocence exception, a petitioner "must show that in light of all the evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Jennings v. United States*, 696 F.3d 759, 764-65 (8th Cir. 2012) (quoting *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). "'[A]ctual innocence' means factual innocence,

not mere legal insufficiency." *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)).

# IV. DISCUSSION

## A. Claim One

Alarcon-Chavez claims he was denied his right to due process under the 5th, 6th, and 14th Amendments because the trial court erred in rejecting his proposed jury instruction that the State must prove beyond a reasonable doubt that the intentional killing was not the result of a sudden quarrel and in failing to find the entire step instruction was an incorrect statement of law. The jury was given the standard step instruction defining the elements of first degree murder, second degree murder, and manslaughter, in that order.

In Alarcon-Chavez's direct appeal brief, he argued that, under *State v. Smith*, 282 Neb. 720, 806 N.W.2d 383 (2011), his murder conviction must be reversed because the jury instruction on manslaughter did not require the State to prove that the killing was not the result of a sudden quarrel, which violated the due process clauses of the United States and Nebraska Constitutions. (Filing No. 10-2 at CM/ECF pp. 38-42.)

In addressing this claim, the Nebraska Supreme Court reasoned and determined as follows:

> In *Smith*, we found a jury instruction erroneous because it required the jury to convict on second degree murder if it found the killing was intentional and because the instruction did not permit the jury to consider the alternative possibility that the killing was intentional but provoked by a sudden quarrel. The jury instruction here is substantially similar to the one given in *Smith*.

Despite Alarcon-Chavez'[s] contentions, this is not a structural error requiring automatic reversal. In *Smith*, we classified the error as trial error and noted:

> Before an error in the giving of jury instructions can be considered as a ground for reversal of a conviction, it must be considered prejudicial to the rights of the defendant. The appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. [*Smith*, 282 Neb. at 734-35, 806 N.W.2d at 394.]

We concluded in *Smith* that the defendant failed to meet his burden because the evidence was insufficient for a jury to reasonably conclude that provocation existed so as to justify an instruction on sudden quarrel manslaughter.

We reach the same conclusion here, although for a slightly different reason. The jury was instructed that it could return one of several verdicts: guilty of first degree murder, guilty of second degree murder, guilty of manslaughter, or not guilty. From these, the jury convicted Alarcon-Chavez of first degree murder.

We have held that a defendant convicted of first degree murder under a step instruction cannot be prejudiced by any error in the instructions on second degree murder or manslaughter because under the step instruction, the jury would not have reached those levels of homicide. [*See State v. Canbaz*, 270 Neb. 559, 705 N.W.2d 221 (2005). *See*, *also*, *State v. Benzel*, 269 Neb. 1, 689 N.W.2d 852 (2004).] And other courts have also concluded that when a jury is instructed on first and second degree murder and the defendant is found guilty of first degree murder, any error in the instruction for manslaughter or any improper failure to instruct the jury on manslaughter does not require reversal. [*See*, *State v. Soto*, 162 N.H. 708, 34 A.3d 738 (2011); *State v. Yoh*, 180 Vt. 317, 910 A.2d 853 (2006); *State v. Williams*, 977 S.W.2d 101 (Tenn. 1998); *People v. Mullins*, 188 Colo. 23, 532 P.2d 733 (1975); *McNeal v. State*, 67 So. 3d 407 (Fla. App. 2011), *review denied* 77 So. 3d 1254 (Fla. 2011); *State v. Barnes*, 740 S.W.2d 340 (Mo. App. 1987).]

Here, the jury considered how Villarreal's death occurred and concluded Alarcon-Chavez killed her purposely and with deliberate and premeditated malice. In so concluding, the jury necessarily considered and rejected that the killing was the result of provocation and was therefore without malice. The jury found the evidence met the elements of first degree murder. Under these circumstances where the jury found that premeditation, intent, and malice existed beyond a reasonable doubt, Alarcon-Chavez was not prejudiced and his substantial rights were not affected by the manslaughter instruction.

*Alarcon-Chavez*, 284 Neb. at 334-35, 821 N.W.2d at 368-69. (Filing No. 10-13 at CM/ECF pp. 11-12.)

The formulation of jury instructions primarily concerns the application and interpretation of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (stating that a federal habeas court is not to "reexamine state-court determinations on state-law questions"). A finding that a jury instruction is permissible under state law, however, does not determine whether due process has been violated under federal law. *See id.* at 68, 112 S. Ct. 475; *Seiler v. Thalacker*, 101 F.3d 536, 539 (8th Cir. 1996).

Due process requires a prosecutor to prove beyond a reasonable doubt every fact necessary to constitute the crime charged. *In re Winship*, 397 U.S. 358, 365, 90 S. Ct. 1068, 25 L. Ed. 2d. 368 (1970); *State v. Hinrichsen*, 292 Neb. 611, 625, 877 N.W.2d 211, 222 (2016) (noting that the due process requirements of Nebraska's Constitution are similar to those of the federal Constitution). "The State is foreclosed from shifting the burden of proof to the defendant only 'when an affirmative defense does negate an element of the crime.'" *Smith v. United States*, 568 U.S. 106, 110, 133 S. Ct. 714, 184 L. Ed. 2d 570 (2013) (quoting *Martin v. Ohio*, 480 U.S. 228, 237, 107 S. Ct. 1098, 94 L. Ed. 2d 267 (1987) (Powell, J., dissenting)). "Where instead it 'excuse[s] conduct that would otherwise be punishable,' but 'does not controvert any of the elements of the offense itself,' the Government has no

constitutional duty to overcome the defense beyond a reasonable doubt." *Id.* (quoting *Dixon v. United States*, 548 U.S. 1, 6, 126 S. Ct. 2437, 165 L. Ed. 2d 299 (2006)).

"[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *see Nash*, 807 F.3d at 897 (quoting *Jackson*, 443 U.S. at 324, 99 S. Ct. at 2791-92). In conducting the sufficiency-of-evidence inquiry, the reviewing court must "give[ ] full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Further, the court must evaluate the record evidence "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16, 99 S. Ct. at 2792 n.16.

"[F]irst degree murder in Nebraska occurs when a person kills another purposely and with deliberate and premeditated malice." *Hinrichsen*, 292 Neb. at 627, 877 N.W.2d at 223. Due process is met as long as the State has to prove beyond a reasonable doubt all of those enumerated elements: a killing, done purposely, with deliberate and premeditated malice. *Id.*; *see Patterson v. New York*, 432 U.S. 197, 206, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977). The United States Supreme Court has not adopted "as a constitutional imperative . . . that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused." *Patterson*, 432 U.S. at 210, 97 S. Ct. at 2327.

Under Nebraska law, the existence of a sudden quarrel "is the converse of the enumerated elements of first degree murder." *Hinrichsen*, 292 Neb. at 634, 877 N.W.2d at 227. Because "lack of sudden quarrel is not a statutory element of first degree murder in Nebraska . . . an explicit jury instruction advising that the State must prove lack of sudden quarrel provocation beyond a reasonable doubt is not

required in order to comport with the dictates of due process." *Id.* at 632-33, 877 N.W.2d at 226. "Instead, the question is whether the jury instructions given, viewed as a whole, adequately informed the jury that the State had the burden to prove lack of sudden provocation beyond a reasonable doubt in order to convict [the defendant] of first degree murder." *Id.* at 633, 877 N.W.2d at 226. In making a finding beyond a reasonable doubt that a defendant acted with deliberate and premeditated malice, the jury necessarily simultaneously finds beyond a reasonable doubt that there was no sudden quarrel provocation, i.e., that the defendant did not act without due deliberation and reflection. *Id.* at 633, 877 N.W.2d at 227 (noting "[i]t is logically impossible to both deliberate and not deliberate at the same time"); *see also Alarcon-Chavez*, 284 Neb. at 334-35, 821 N.W.2d at 368-69 (in concluding that the defendant killed the victim purposely and with deliberate and premeditated malice, the jury necessarily considered and rejected that the killing was the result of provocation and was therefore without malice). As the Nebraska Supreme Court held in Alarcon-Chavez's direct appeal, where a jury finds beyond a reasonable doubt that premeditation, intent, and malice exist, the defendant is not prejudiced by an error in a step instruction. *Alarcon-Chavez*, 284 Neb. at 334-35, 821 N.W.2d at 368-69.

Habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that the error resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993). The state bears the burden of persuasion on the question of prejudice. *Fry v. Pliler*, 551 U.S. 112, 121 n.3, 127 S. Ct. 2321, 168 L. Ed. 2d 16 (2007). To assess the prejudicial impact of trial-type federal constitutional error in a state-court criminal trial, federal courts determine whether the trial error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 638, 113 S. Ct. at 1722; *see Fry*, 551 U.S. at 121, 127 S. Ct. at 2328.

The commission of a constitutional error at trial alone does not entitle a defendant to automatic reversal; "[i]nstead 'most constitutional errors can be harmless.'" *Washington v. Recuenco*, 548 U.S. 212, 218, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006) (quoting *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144

L. Ed. 2d 35 (1999)). Only in a narrow category of cases—those involving "structural defects" that deprive defendants of basic protections and render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence—will an error always invalidate a conviction, even without a showing of prejudice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 n.4, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006) (explaining trial error/structural defect dichotomy and finding structural error in denial of counsel of choice); *Recuenco*, 548 U.S. at 218, 126 S. Ct. at 2551 ("Only in rare cases has [the Supreme Court] held that an error is structural, and thus requires automatic reversal").[1] Structural defects "'defy analysis by "harmless-error" standards' because they 'affec[t] the framework within which the trial proceeds,' and are not 'simply an error in the trial process itself.'" *Gonzalez-Lopez*, 548 U.S. at 148-49 & n.4, 126 S. Ct. at 2564 & n.4 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309-10, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)).

Alarcon-Chavez argues that the erroneous jury instructions amounted to structural error and that he was denied due process because, had the jury been properly instructed, the jury could have found him guilty of manslaughter. (Filing

---

[1] Structural error has been found in the following circumstances: a defective reasonable-doubt instruction, *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993); conflicted counsel, *Mickens v. Taylor*, 535 U.S. 162, 166, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002); appointment of an interested prosecutor, *Young v. United States ex rel. Vuitton et Fils, S.A.*, 481 U.S. 787, 909, 107 S. Ct. 2124, 95 L. Ed. 2d 740 (1987) (plurality opinion); racial discrimination in selection of a grand jury, *Vasquez v. Hillery*, 474 U.S. 254, 264, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986); denial of a public trial, *Waller v. Georgia*, 467 U.S. 39, 49, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984); failure of counsel to subject the government's case to meaningful adversarial testing, *United States v. Cronic*, 466 U.S. 648, 659, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984); denial of representation at trial, *McKaskle v. Wiggins*, 465 U.S. 168, 174-76, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984); counsel operating under an actual conflict of interest, *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980); denial of counsel, *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); and a trial by a biased judge, *Tumey v. Ohio*, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927).

No. 1 at CM/ECF p. 27.) Unfortunately for Alarcon-Chavez, that contention is unavailing under Nebraska law. Subsequent to *Smith*, the Nebraska Supreme Court rejected the argument that "because a jury in a second degree murder case must be specifically instructed that the State has to prove lack of sudden quarrel provocation in order to prove the murder, a jury in a first degree murder case must also be specifically instructed that the State has to prove lack of sudden quarrel provocation in order to prove the murder." *Hinrichsen*, 292 Neb. at 625, 877 N.W.2d at 221. It found that "when the jury found premeditated and deliberate malice beyond a reasonable doubt, it simultaneously found no sudden quarrel provocation beyond a reasonable doubt" and concluded that the defendant therein had received due process. *Id.* at 613; 877 N.W.2d at 221.

Alarcon-Chavez's claim might have some merit if there were any evidentiary basis for finding that the salient issue was the distinction between second-degree and manslaughter, as it was in *Smith*.[2] *See Robinson v. Sabatka-Rine*, No. 8:13CV197, 2016 WL 5254825, at *13 (D. Neb. Sept. 22, 2016) (citing *Hinrichsen*, 292 Neb. at 621-22, 877 N.W.2d at 220). Here, the jury's finding of deliberate and premeditated murder, a finding that is supported by the evidence, means the jury "necessarily considered and rejected that the killing was the result of provocation and was therefore without malice." *Id.* (quoting *Hinrichsen*, 292 Neb. at 636, 877 N.W.2d at 228). Like the defendant in *Hinrichsen*, Alarcon-Chavez was afforded due process in that

> the jury was not in any way prevented from considering the crucial issue. When it decided beyond a reasonable doubt that [Alarcon-

---

[2] The Nebraska Supreme Court later clarified its holding in *Smith*, stating:

> where there is evidence that (1) a killing occurred intentionally without premeditation and (2) the defendant was acting under the provocation of a sudden quarrel, a jury must be given the option of convicting of either second degree murder or voluntary manslaughter depending upon its resolution of the fact issue regarding provocation.

*State v. Smith*, 284 Neb. 636, 656, 822 N.W.2d 401, 417 (2012) (*Smith II*).

Chavez] killed with deliberate and premeditated malice, it necessarily also decided beyond a reasonable doubt that the converse was true—i.e., his actions were not the result of a sudden quarrel, done "rashly, without due deliberation and reflection." Instead of preventing the jury from considering the crucial issue, the jury instructions here directly presented that issue to the jury for its consideration. And the instructions at all times placed the burden of proof on the State.

*See Hinrichsen*, 292 Neb. at 636, 877 N.W.2d at 228 (noting also that the first degree murder step instruction is very different from the second degree murder step instruction that the *Smith* court found to be erroneous—the key distinction being that in *Smith*, the jury was prevented from considering the crucial issue—whether the killing, although intentional, was the result of a sudden quarrel); *see also Sabatka-Rine*, 2016 WL 5254825, at *13. The burden of proving whether Alarcon-Chavez acted with deliberate and premeditated malice, and thus did not act under a sudden provocation, rested on the State. *See Sabatka-Rine*, 2016 WL 5254825, at *13. There was no shifting of the burden to Alarcon-Chavez. *See id.*

Any error in the step instructions vis-a-vis second degree murder and manslaughter would be harmless. *See id.* at *14. As the Nebraska Supreme Court noted, an erroneous step instruction "is not a structural error requiring automatic reversal." *Alarcon-Chavez*, 284 Neb. at 334, 821 N.W.2d at 368; *see also Sabatka-Rine*, 2016 WL 5254825, at *14. "A defendant convicted of first degree murder under a step instruction cannot be prejudiced by any error in the instructions on second degree murder or manslaughter because under the step instruction, the jury would not have reached those levels of homicide." *Sabatka-Rine*, 2016 WL 5254825, at *14 (citing *Alarcon-Chavez*, 284 Neb. at 335, 821 N.W.2d at 368).

The court finds the Nebraska Supreme Court's decision in this case is not contrary to, nor did it involve an unreasonable application of, clearly established federal law. The finding of purposefulness and premeditation are supported by the evidence, and the Nebraska Supreme Court's decision likewise cannot be said to be

"based on an unreasonable determination of the facts in light of the evidence presented." Therefore, Alarcon-Chavez is entitled to no relief on Claim One.

## B. Claim Two

Alarcon-Chavez claims he was denied his right to be free from unreasonable searches and seizures under the 4th and 14th Amendments because the trial court erred in overruling his amended motion to suppress based on an unauthorized seizure of his vehicle without a warrant. The Supreme Court has held that Fourth Amendment claims are not cognizable in a federal habeas action unless the petitioner did not receive a full and fair opportunity to litigate the Fourth Amendment claim in the state courts. *Stone v. Powell*, 428 U.S. 465, 494, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976); *see also Willett v. Lockhart*, 37 F.3d 1265, 1273 (8th Cir. 1994). Because the record shows that the Nebraska courts provided Alarcon-Chavez with a full and fair hearing on the matter, and there is absolutely no evidence to establish or reason to believe that there was an unconscionable breakdown in the state-court mechanism for considering Alarcon-Chavez's Fourth Amendment claim, Claim Two is not cognizable.

## C. Claim Three

Alarcon-Chavez claims he was denied his right to a fair trial under the 5th, 6th, and 14th Amendments because of the prosecutor's inflammatory remarks made during his closing and rebuttal arguments.

The test for prosecutorial misconduct has two parts: "(1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." *United States v. Hernandez*, 779 F.2d 456, 458 (8th Cir. 1985); *Stringer v. Hedgepeth*, 280 F.3d 826, 830 (8th Cir. 2002) (habeas petitioner has burden of establishing that the outcome of his trial probably would have been different but for the prosecutor's misconduct).

The Nebraska Supreme Court determined that most of the prosecutor's comments were not improper, because they were based on the evidence and were few and isolated in a long closing argument and rebuttal. *Alarcon-Chavez*, 284 Neb. at 337-39, 821 N.W.2d at 370-71. (Filing No. 10-13 at CM/ECF pp. 12-14.) In addition, the Nebraska Supreme Court made an express finding that "any resulting prejudice to Alarcon-Chavez was not of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, and fairness of the judicial process." *Alarcon-Chavez*, 284 Neb. at 339, 821 N.W.2d at 371. (Filing No. 10-13 at CM/ECF p. 14.)

The court agrees with the Nebraska Supreme Court's conclusions that many of the prosecutor's comments merely addressed inferences the prosecutor was asking the jury to draw from the evidence, and that any improper comments did not affect the outcome of the trial as the comments were fleeting and the evidence of guilt was overwhelming. More importantly, Alarcon-Chavez has failed to show that the Nebraska Supreme Court's conclusion was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). As such, Claim Three is denied.

## E.  Claim Four

Next, Alarcon-Chavez asserts that he was denied his rights to due process and to effective assistance of counsel under the 5th, 6th, and 14th Amendments because trial counsel failed to (1) verify, ensure, and/or preserve the making of an official record of the voir dire proceeding, (2) raise a challenge under *Batson*, when the State struck a Hispanic juror from the venire; (3) communicate plea offers; (4) speak with witnesses provided by Alarcon-Chavez; (5) advise Alarcon-Chavez of his right to independently test DNA, (6) advise Alarcon-Chavez of his right to depose the State's

expert witnesses, and (7) object during trial to the State's questioning of key witnesses and offers of exhibits.

## 1. The Especially Deferential *Strickland* Standard

When a petitioner asserts an ineffective assistance of counsel claim, the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), must be applied. The standard is very hard for offenders to satisfy.

*Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687, 104 S. Ct. at 2064. The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Id.* at 687-88, 104 S. Ct. 2064-65. In conducting such a review, the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S. Ct. at 2066. The second prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068. A court need not address the reasonableness of the attorney's skills and diligence if the movant cannot prove prejudice under the second prong of this test. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" in a later habeas corpus action. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

Additionally, the Supreme Court has emphasized that the deference due the state courts applies with vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009). In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and "leeway," which presents a

"substantially higher threshold" for a federal habeas petitioner to overcome. *Id.* at 123, 129 S. Ct. 1411. As stated in *Knowles*:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Id.* (internal quotation marks and citations omitted).

In habeas corpus proceedings, federal courts "are bound by the state court's factual finding that counsel made a strategic choice" regarding trial decisions. *Smith v. Jones*, 923 F.2d 588, 590 (8th Cir. 1991) (citing 28 U.S.C. § 2254(d); *Brown v. Lockhart*, 781 F.2d 654, 658 (8th Cir. 1986)). The factual findings of the Nebraska Supreme Court are binding in this court unless the petitioner can establish that these findings were erroneous or not supported by the record. *See* 28 U.S.C. 2254(d); *Sumner v. Mata*, 449 U.S. 539, 550, 101 S. Ct. 764, 66 L. Ed. 2d 722 (1981); *Graham v. Solem*, 728 F.2d 1533, 1540-41 (8th Cir. 1984); *cert. denied*, 469 U.S. 842 (1984).

## 2. Discussion

As a general matter, the court observes that, before the Nebraska Supreme Court addressed the below ineffective assistance of counsel claims, it properly set forth the *Strickland* standards. *Alarcon-Chavez*, 295 Neb. at 1021-22, 893 N.W.2d at 713-14. (Filing No. 10-22 at CM/ECF pp. 7-8.)

### a. Failure to Record Voir Dire

Alarcon-Chavez claims that trial counsel was ineffective for failing to ensure that voir dire was recorded because it deprived him of the ability to make a *Batson* claim. In addressing this claim, the Nebraska Supreme Court reasoned and determined as follows:

> At the evidentiary hearing, one of Alarcon-Chavez'[s] attorneys testified that he explained the voir dire process to Alarcon-Chavez, including what would happen when the jury came in, the number of strikes per side, when a strike for cause could be made, and when peremptory strikes could be used. This defense attorney did not remember if there was any conversation about whether to record voir dire, or whether Alarcon-Chavez specifically waived the recording of voir dire.
>
> In its order denying postconviction relief, the district court noted there was no evidence that any party, or the court, requested voir dire be recorded. It then quoted from *State v. Jones*, [246 Neb. 673, 675, 522 N.W.2d 414, 415 (1994)][,] a case in which we held our court rules require the transcription of voir dire only "when requested by counsel, any party, or the court." In *Jones*, we reasoned that because recording voir dire is not made mandatory by the court rules, "the failure to require recordation cannot be said, ipso facto, to constitute negligence or inadequacy of counsel." [*Id.* at 675, 522 N.W.2d at 415-16.]
>
> Neb. Ct. R. § 2-105(A)(2) (rev. 2010) states:
>
>> Upon the request of the court or of any party, either through counsel or pro se, the court reporting personnel shall make or have made a verbatim record of anything and everything said or done by anyone in the course of trial or any other proceeding, including, but not limited to . . . the voir dire examination. . . .
>
> Neither *Jones* nor § 2-105(A)(2) provide that a verbatim record of voir dire is mandatory. On this record, we agree with the district court that Alarcon-Chavez failed to prove his trial counsels' performance was

deficient, and he failed to prove any prejudice from the fact that voir dire was not recorded. The trial court correctly denied relief on this claim.

*Alarcon-Chavez*, 295 Neb. at 1023, 893 N.W.2d at 715. (Filing No. 10-22 at CM/ECF p. 8.)

To show trial counsel's performance was deficient under *Strickland* on this claim, Alarcon-Chavez would have to show that recording voir dire is mandatory under state law. As the Nebraska Supreme Court stated, Nebraska court rules do not mandate a verbatim recording of voir dire, Neb. Ct. R. § 2-105(A)(2), and Nebraska state courts have concluded that "the failure to require recordation cannot be said, ipso facto, to constitute negligence or inadequacy of counsel," *Jones*, 246 Neb. at 675, 522 N.W.2d at 415-16. *Alarcon-Chavez*, 295 Neb. at 1023, 893 N.W.2d at 715. (Filing No. 10-22 at CM/ECF p. 8.) Neither the Constitution nor federal law requires that voir dire in state court proceedings be transcribed or recorded. Assuming that trial counsel performed deficiently by failing to have the voir dire portion of trial transcribed, there was no prejudice to Alarcon-Chavez as a result. As discussed below, trial counsel testified at the postconviction hearing that, had the State not used one of its peremptory strikes on the subject juror, he would have done so, because one of the juror's comments suggested he was someone who wanted to be on the jury in order to return a conviction. Because trial counsel chose not to raise a *Batson* challenge as a matter of trial strategy, the lack of a record of the voir dire is inconsequential. Alarcon-Chavez has failed to demonstrate that the Nebraska Supreme Court's rejection of this claim was contrary to, or an unreasonable application of, federal law, and therefore, Alarcon-Chavez is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d).

### b. Failure to Raise *Batson* Challenge

Alarcon-Chavez asserts that trial counsel was ineffective for failing to raise a *Batson* challenge after the State used a peremptory strike to remove a Hispanic juror

from the panel. In striking the juror, the State voluntarily made a record of its reason for the strike even though no *Batson* challenge had been raised by Alarcon-Chavez.

> The Nebraska Supreme Court held the following on this issue:
>
> > During the evidentiary hearing, one of Alarcon-Chavez'[s] trial attorneys testified he did not raise a *Batson* challenge because he, too, wanted the juror removed from the panel. Trial counsel explained that the juror was a criminal justice major who commented that it would be "an honor" to serve as a juror. Trial counsel thought the juror's comment suggested he was someone who wanted to be on the jury in order to return a conviction. Trial counsel testified that if the State had not used one of its peremptory strikes on that juror, he would have done so.
> >
> > When reviewing a claim of ineffective assistance of counsel, an appellate court will not second-guess reasonable strategic decisions by counsel. [*State v. Branch*, 290 Neb. 523, 860 N.W.2d 712 (2015).] Defense counsel's strategic decision not to raise a *Batson* challenge was reasonable and does not support a finding of ineffectiveness.

*Alarcon-Chavez*, 295 Neb. at 1024, 893 N.W.2d at 715. (Filing No. 10-22 at CM/ECF p. 9.)

Applying the deferential standards required by both *Strickland* and by § 2254(d), the court finds nothing to indicate that the Nebraska Supreme Court's ruling was "contrary to, or involved an unreasonable application of, clearly established Federal law." Clearly, trial counsel's decision not to raise a *Batson* challenge was a matter of trial strategy; the record demonstrates that trial counsel would have used a peremptory strike to remove the juror had the State not done so based on trial counsel's assessment that the juror would not have been a favorable juror to the defense. Thus, Alarcon-Chavez is entitled to no relief on this claim.

### c. Failure to Communicate Plea Offers

Alarcon-Chavez next asserts that trial counsel was ineffective for failing to timely communicate plea offers.

In addressing this claim, the Nebraska Supreme Court set forth the relevant law:

> The United States Supreme Court has established that the right to effective assistance of counsel extends to the negotiation of a plea bargain. [*See Missouri v. Frye*, 566 U.S. 134,132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012).] And claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland v. Washington*. [*See id.*]

*Alarcon-Chavez*, 295 Neb. at 1024, 893 N.W.2d at 716. (Filing No. 10-22 at CM/ECF p. 9.)

Turning to the facts of the case, the Nebraska Supreme Court then explained:

> According to Alarcon-Chavez, the State offered a plea deal which his attorneys did not convey to him until the night before trial. Alarcon-Chavez testified that he accepted the offer once conveyed, but when his attorneys communicated his acceptance to the State the next morning, the plea offer had been withdrawn.

> At the evidentiary hearing, one of Alarcon-Chavez'[s] trial attorneys testified he met with Alarcon-Chavez the night before trial and told him that they were looking at a very difficult case to win based on self-defense and that Alarcon-Chavez likely would be convicted. Trial counsel testified he told Alarcon-Chavez it might be advantageous to try and get a last-minute plea agreement for something that did not carry a mandatory life sentence. Trial counsel asked Alarcon-Chavez whether he would be willing to plead to second degree murder, use of a weapon, witness tampering, and making terroristic threats. According to trial counsel, Alarcon-Chavez agreed and authorized him to contact

the State. Trial counsel contacted the prosecutor directly after this conversation with Alarcon-Chavez and communicated the plea offer. The prosecutor refused the plea offer and would not make a counter offer. Trial counsel relayed this information to Alarcon-Chavez the next morning. Trial counsel's version of events was confirmed by another of Alarcon-Chavez'[s] trial attorneys, who testified in addition that she had approached the prosecution on several occasions during the pendency of the case requesting a plea offer, but each time, the prosecutor had refused.

In its order, the court made factual findings consistent with the testimony of Alarcon-Chavez'[s] trial attorneys, and the court concluded Alarcon-Chavez failed to prove his attorneys were ineffective for failing to timely communicate plea offers. In an evidentiary hearing for postconviction relief, the postconviction trial judge, as the trier of fact, resolves conflicts in evidence and questions of fact, including witness credibility and the weight to be given a witness' testimony. [*State v. Branch*, 290 Neb. 523, 860 N.W.2d 712 (2015).] We find no clear error in the district court's factual findings, and we agree that Alarcon-Chavez failed to prove his trial attorneys were ineffective for failing to communicate plea offers.

*Alarcon-Chavez*, 295 Neb. at 1024-26, 893 N.W.2d at 715-16. (Filing No. 10-22 at CM/ECF pp. 9-10.)

The state district court's findings of fact, as adopted by the Nebraska Supreme Court, and the Nebraska Supreme Court's conclusions of law, are entitled to deference. Those findings establish that the State made no plea offers to Alarcon-Chavez, and thus, there were no plea offers to communicate to him. Trial counsel cannot be ineffective for failing to communicate plea offers that do not exist. More importantly, Alarcon-Chavez has not shown that the Nebraska Supreme Court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or that the court reached "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding," 28 U.S.C. § 2254(d)(2). This claim has no merit, and a grant of a writ of habeas corpus is not warranted on this issue.

### d. Failure to Contact Witnesses

Alarcon-Chavez also claims that trial counsel was ineffective for failing to contact or call at trial witnesses identified by Alarcon-Chavez.

The background underlying this claim is set forth in the Nebraska Supreme Court's opinion:

> At his first meeting with defense counsel, Alarcon-Chavez provided counsel the names of four witnesses he wanted to testify on his behalf. Alarcon-Chavez claims all four witnesses would have testified about the victim's threatening and blackmailing him and would have supported his claim of self-defense. . . .
>
> At the evidentiary hearing, Alarcon-Chavez'[s] attorneys testified that only one of the potential witnesses could be located. With respect to that witness, defense counsel concluded that based on the witness' reports to police, he would not have been a helpful witness. Additionally, after meeting with that witness, Alarcon-Chavez'[s] counsel concluded he was unhelpful and bordering on hostile.
>
> Counsel further testified, with respect to all four witnesses identified by Alarcon-Chavez:
>
> > All of this information from these witnesses, if it came out, and I believed it would have—would not have helped [Alarcon-Chavez's] case. It would have shown that there was a prior relationship that involved threats and violence against each other, and that's the last thing I wanted the jury to hear was prior incidents of violent behavior toward this victim.
>
> In its order, the district court made findings consistent with the testimony of Alarcon-Chavez'[s] trial attorneys and concluded

Alarcon-Chavez had failed to meet his burden of proof on this claim of ineffective assistance of counsel.

*Alarcon-Chavez*, 295 Neb. at 1026, 893 N.W.2d at 716-17. (Filing No. 10-22 at CM/ECF p. 10.)

The Nebraska Supreme Court found no clear error in the trial court's findings and agreed with the trial court's conclusion. *Alarcon-Chavez*, 295 Neb. at 1026, 893 N.W.2d at 717. (Filing No. 10-22 at CM/ECF p. 10.) The court reasoned:

> The decision to call, or not to call, a particular witness, made by counsel as a matter of trial strategy, even if that choice proves unproductive, will not, without more, sustain a finding of ineffectiveness of counsel. [*State v. Thomas*, 278 Neb. 248, 769 N.W.2d 357 (2009).] A defense attorney has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. [*State v. Ellefson*, 231 Neb. 120, 435 N.W.2d 653 (1989).] A reasonable strategic decision to present particular evidence, or not to present particular evidence, will not, without more, sustain a finding of ineffective assistance of counsel. We do not second-guess strategic decisions made by trial counsel, so long as those decisions are reasonable. [*State v. Canbaz*, 270 Neb. 559, 705 N.W.2d 221 (2005).] Here, trial counsels' decision not to pursue or call the four witnesses was reasonable, and counsel did not perform deficiently.

*Alarcon-Chavez*, 295 Neb. at 1026-27, 893 N.W.2d at 717. (Filing No. 10-22 at CM/ECF pp. 10-11.)

Alarcon-Chavez has failed to argue or demonstrate that the factual findings of the state court were either erroneous or lacked fair support in the record. The Nebraska Supreme Court found that Alarcon-Chavez's trial counsel made a strategic decision not to call the individuals provided by Alarcon-Chavez as witnesses based on counsel's assessment that their testimony would not have helped Alarcon-Chavez's case, and, in fact, would have hurt his case. In the absence of evidence suggesting this factual finding is erroneous or lacks support in the record, the court

is bound by the factual finding that counsel's decision not to call these witnesses was strategic. *See Smith*, 923 F.2d at 590.

Trial counsel's strategic choice is entitled to great deference. *See id.* at 590. As mentioned earlier, to prevail on a claim of ineffective assistance of counsel, Alarcon-Chavez must show his counsel's actions were unreasonable and he suffered prejudice as a result of counsel's deficiencies. *Strickland*, 466 U.S. at 691-92. Having considered the matter, the court concludes that trial counsel's decision not to call as trial witnesses the individuals Alarcon-Chavez provided, after determining their testimony would have shown that the prior relationship between Alarcon-Chavez and Villarreal involved threats and violence against each other, was strategic. Furthermore, the court notes that Alarcon-Chavez fails to indicate how he was prejudiced by trial counsel's decision. Given the fact that the intended testimony would have shown that the prior relationship between Alarcon-Chavez and Villarreal involved threats and violence against each other—coupled with the other evidence presented at the trial—makes it unlikely that the outcome of Alarcon-Chavez's trial would have changed. Alarcon-Chavez is not entitled to habeas relief on this claim.

### e.  Failure to Advise Petitioner of his Right to Independently Test DNA

Alarcon-Chavez argues that trial counsel was ineffective for failing to independently test DNA evidence and for failing to advise him of his right to have DNA testing performed.

The Nebraska Supreme Court recounted the factual background and the state district court's resolution of this claim:

> When asked what DNA evidence Alarcon-Chavez wanted his lawyers to find, Alarcon-Chavez responded:
>
>> Well, I don't know how to explain it. Before [the prosecution] said that I was the only one in the apartment, true, and I testified that I was the one that stabbed her. So

what I think is [my lawyers] should have informed me about the [sic] not doing the DNA test.

At the evidentiary hearing, one of Alarcon-Chavez'[s] trial attorneys testified that he did not think DNA testing would have been helpful to the defense. Police officers found Alarcon-Chavez standing over the victim and holding two knives, and Alarcon-Chavez did not deny stabbing the victim. The issue at trial was not the identity of the perpetrator, but whether Alarcon-Chavez had acted in self-defense.

The district court found there was no merit to the claim that counsel were ineffective for failing to pursue independent testing of the DNA evidence, reasoning:

> [Alarcon-Chavez's] former attorney testified that DNA analysis of the knife used would not have furthered [his] case. [Alarcon-Chavez] wanted to raise the affirmative defense of self-defense; therefore, no issue of identity existed. The evidence also revealed when the officers entered the apartment there were only two people present, the victim and [Alarcon-Chavez].

*Alarcon-Chavez*, 295 Neb. at 1027-28, 893 N.W.2d at 717-18. (Filing No. 10-22 at CM/ECF p. 11.)

Considering this claim on appeal, the Nebraska Supreme Court stated:

We find no error in the district court's findings on this issue. Defense counsels' decision not to conduct independent DNA testing was reasonable under the circumstances, and counsel did not perform deficiently for failing to independently test DNA evidence. Nor has Alarcon-Chavez shown any prejudice from counsels' failure to advise him of the right to have DNA testing done.

*Alarcon-Chavez*, 295 Neb. at 1028, 893 N.W.2d at 718. (Filing No. 10-22 at CM/ECF p. 11.)

Applying the deferential standards required by both *Strickland* and by § 2254(d), the court finds nothing to indicate that the Nebraska Supreme Court's ruling was "contrary to, or involved an unreasonable application of, clearly established Federal law." Obtaining DNA testing would have been unproductive to the self-defense claim. Indeed, there was no reason to believe that DNA testing would have exonerated Alarcon-Chavez. After all, Alarcon-Chavez did not deny that he stabbed the victim; instead, he maintained that he did so in self-defense. Trial counsel's strategic choice is entitled to great deference. *See Smith*, 923 F.2d at 590. Furthermore, the court cannot find that there is a reasonable probability that, but for counsel's failure to obtain DNA testing, the result of the trial would have been different, or that the lack of DNA testing in any way undermined confidence in the outcome of Alarcon-Chavez's trial. Thus, Alarcon-Chavez has failed to demonstrate that his counsel's alleged errors in refusing to obtain DNA testing and in failing to inform Alarcon-Chavez of his right to independent DNA testing caused Alarcon-Chavez actual prejudice. Accordingly, Alarcon-Chavez's request for habeas corpus relief with respect to this claim is without merit.

### f. Failure to Advise Petitioner of his Right to Depose the State's Expert Witnesses

Alarcon-Chavez asserts that trial counsel was ineffective for failing to depose the State's expert witnesses.

The following background, set forth by the Nebraska Supreme Court, is relevant to this claim:

> Neither [Alarcon-Chavez's] postconviction motion nor his briefing to [the Nebraska Supreme Court] identifies which expert witnesses his attorneys should have deposed, or what such depositions might have revealed.
>
> One of Alarcon-Chavez'[s] trial attorneys testified that after reviewing all the police reports, medical reports, hospital records, autopsy records,

and the depositions of the police officers involved, he did not see a need to depose anyone else. The district court concluded Alarcon-Chavez failed to prove any prejudice as a result of his attorneys' not deposing the State's experts and found this claim of ineffective assistance to be without merit. It noted evidence showing that Alarcon-Chavez'[s] trial attorneys hired an independent physician to review the State's pathologist's report and opinion, and the independent physician agreed with the State's expert's opinion regarding the cause and manner of death.

*Alarcon-Chavez*, 295 Neb. at 1028, 893 N.W.2d at 718. (Filing No. 10-22 at CM/ECF p. 12.)

In rejecting this claim on appeal, the Nebraska Supreme Court agreed with the state district court's determination that Alarcon-Chavez failed to establish prejudice as a result of trial counsel's failure to depose the State's experts. *Alarcon-Chavez*, 295 Neb. at 1028-29, 893 N.W.2d at 718. (Filing No. 10-22 at CM/ECF p. 12.) Alarcon-Chavez has not identified which experts trial counsel should have deposed or what their depositions would have revealed. He has thus failed to establish that, but for trial counsel's conduct, the result of the proceeding would have been different. Giving the Nebraska courts the deference they are due, Alarcon-Chavez is not entitled to relief on this claim.

### g. Failure to Object During Trial

Alarcon-Chavez claims that trial counsel was ineffective for failing "to object to the State's questioning of key witnesses and offers of exhibits during the Trial." (Filing No. 1 at CM/ECF p. 61.) Neither Alarcon-Chavez nor Respondent discussed this claim in their respective briefs submitted in this case. (*See generally* Filing No. 13 & Filing No. 18.)

As the Nebraska Supreme Court outlined, Alarcon-Chavez identified the following instances where trial counsel failed to object:

During testimony of . . . Pino on direct examination by the Madison County Attorney, he testified to what Manuel Montalvo was saying to [Alarcon-Chavez], which was clearly hearsay. There was no objection made by the counsel for [Alarcon-Chavez]. . . . In addition, counsel for [Alarcon-Chavez] did not object to "Exhibit 9" . . . which was a picture of the victim lying on the floor. . . . At another time, . . . Pino was questioned about and testified to what the victim told him about her wound and when she received the same, and there was no objection by counsel for [Alarcon-Chavez]. . . . In another incident during his testimony, there were multiple questions about what the victim said to . . . Pino while she was laying [sic] on the floor after the police arrived, and there were no objections to any of those questions. . . . He testified to what he saw when he entered the apartment and discussed there being a child present in the apartment without objection. . . . Pino testified he saw [Alarcon-Chavez] holding the knives, but was lead [sic] into the question by the County Attorney asking "and did you see the knives?"

*Alarcon-Chavez*, 295 Neb. at 1029, 893 N.W.2d at 718-19. (Filing No. 10-22 at CM/ECF pp. 12-13; *see also* Filing No. 10-17 at CM/ECF pp. 26-27 (appellate brief).)

Considering this claim, the Nebraska Supreme Court stated:

The district court concluded Alarcon-Chavez failed to show how any of the questions or exhibits were objectionable or how he was prejudiced by the admission of the evidence. The court also found that although Alarcon-Chavez argued the cumulative effect of these failures amounted to ineffective assistance, "[n]o proof was made as to what cumulative effect these alleged failures may have had upon the jury." The court found no merit to this claim of ineffective assistance.

We agree with the district court's determination that Alarcon-Chavez failed to show prejudice from counsel's alleged deficient performance. We therefore conclude this assignment of error is meritless.

*See Alarcon-Chavez*, 295 Neb. at 1029-30, 893 N.W.2d at 719. (Filing No. 10-22 at CM/ECF p. 13.)

The Nebraska Supreme Court's determination is plainly entitled to deference. *See, e.g.*, *Hoon v. Iowa*, 313 F.3d 1058, 1061-62 (8th Cir. 2002) (reversing federal district judge's contrary ruling because under the AEDPA, a federal habeas court must give substantial deference to the state court's analysis of the evidence; holding that state court's decision that defense counsel's deficient performance in failing to object to admission of co-defendant's confession did not prejudice petitioner in light of other evidence of petitioner's guilt, and was not an objectively unreasonable application of the *Strickland* federal ineffective assistance of counsel standard, as required to support habeas relief under AEDPA). The Nebraska Supreme Court's decision is not an objectively unreasonable application of federal law and this court will not (and cannot) second-guess the Nebraska Supreme Court's opinion. As with the other ineffective assistance claims, even if the court conducted a de novo review of this claim, the result would be the same. This claim must therefore be dismissed.

## F. Claim Five

Last, Alarcon-Chavez claims that he was denied his rights to due process and to a fair trial under the 5th, 6th, and 14th Amendments because he could not understand one of the trial court Spanish interpreters.

The state district court rejected the claim on the merits, and the Nebraska Supreme Court affirmed the decision but on different grounds—namely that the claim was procedurally barred. *Alarcon-Chavez*, 295 Neb. at 1032, 893 N.W.2d at 720. (Filing No. 10-22 at CM/ECF pp. 13-14.) The Nebraska Supreme Court explained:

A motion for postconviction relief cannot be used to secure review of issues which were known to the defendant and could have been litigated

on direct appeal. [*State v. Parnell*, 294 Neb. 551, 883 N.W.2d 652 (2016).]

Alarcon-Chavez was aware of any difficulty understanding the interpreter at the time of his direct appeal and could have raised this issue on direct appeal, but did not. Nor, in this postconviction action, has Alarcon-Chavez asserted this claim as one of ineffective assistance of counsel. His claim that he had trouble understanding one of the interpreters is procedurally barred, and this assignment of error is meritless.

*Alarcon-Chavez*, 295 Neb. at 1032, 893 N.W.2d at 720. (Filing No. 10-22 at CM/ECF p. 14.)

The Nebraska Supreme Court found that this issue should have been raised on direct appeal and because it was not raised, it was barred from consideration under Nebraska law. Because the Nebraska Supreme Court rejected Alarcon-Chavez's claim on independent and adequate state procedural grounds, this court is barred from addressing the post-conviction claim. *See Shaddy v. Clarke*, 890 F.2d 1016, 1018 (8th Cir. 1989). The post-conviction claims are therefore exhausted by procedural default and the court cannot reach the merits of these claims unless Alarcon-Chavez demonstrates cause and prejudice excusing the default. *See id.* Alarcon-Chavez has not shown adequate cause or prejudice to excuse the procedural default. Alarcon-Chavez makes only a conclusory allegation that cause is established by the failure of his counsel on direct appeal to raise and preserve this issue. (Filing No. 18 at CM/ECF p. 16.) While ineffective assistance of counsel may constitute "cause" in some circumstances, "[n]ot just any deficiency in counsel's performance will do." *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000). Rather, "the assistance must have been so ineffective as to violate the United States Constitution. In other words, ineffective assistance of counsel adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim" which must be presented to the state courts. *Id.*, 120 S. Ct. at 1591 (citation omitted); *see also Tokar v. Bowersox*, 198 F.3d 1039, 1051 n.13 (8th Cir. 1999)). Alarcon-Chavez did not raise the claim

that direct appeal counsel was ineffective for failing to raise the interpreter claim in the Nebraska state courts. *See Osborne v. Purkett*, 411 F.3d 911, 919 (8th Cir. 2005) (a claim of ineffective assistance of direct appeal counsel must be raised in a postconviction motion and on postconviction appeal). Moreover, there is no reason to believe Alarcon-Chavez is actually (meaning factually) innocent or that some miscarriage of justice took place. The court has carefully examined the record. The evidence was sufficient to convict Alarcon-Chavez beyond a reasonable doubt. As such, Claim Five is dismissed.

## V.  CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484-85, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000).

In this case, Petitioner has failed to make a substantial showing of the denial of a constitutional right. The court is not persuaded that the claims raised in Petitioner's petition are debatable among reasonable jurists, that a court could resolve the claims differently, or that the claims deserve further proceedings. Accordingly, the court will not issue a certificate of appealability in this case.

IT IS THERFORE ORDERED that Petitioner's Petition for Writ of Habeas Corpus (Filing No. 1) is denied and dismissed with prejudice. No certificate of appealability has been or will be issued. The court will enter a separate judgment in accordance with this Memorandum and Order.

Dated this 1st day of October,  2018.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge